**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
--------------------------------------------------------X

                                                  Civil Action

JASON JORJANI,

                         Plaintiff,

                                             **COMPLAINT**

-vs-

FADI P. DEEK, ERIC KATZ,
DENISE ANDERSON, BASIL BALTZIS,
MATTHEW GOLDEN, HOLLY STERN,
CHRISTINE LI, STEPHEN A. DEPALMA,
VINCENT L. DECAPRIO,
LAWRENCE A. RAIAI , DENNIS M. BONE,
PETER A. CISTARO, DIANE MONTALTO,
JOSEPH M. TAYLOR, AND DENNIS M. TOFT,
individually,

                                  Defendants.

--------------------------------------------------------X

Plaintiff alleges the following:

1.    This is a civil action seeking damages against Defendants for committing acts under color of law that deprive Plaintiff of rights secured to him under the Constitution and the laws of the United States, for retaliating against Plaintiff for the exercise of the First Amendment rights of freedom of speech and association, and for conspiracy to deprive Plaintiff of his constitutional rights.  The Defendants herein are sued in their individual capacities.

<div align="center">JURISDICTION & VENUE</div>

2.    This court has jurisdiction of this action pursuant to §§ 1331 & 1343 of Title 28 of the United States Code, and § 1983 of Title 42 of the United States Code.

3.    Venue is properly laid in this court under the provisions of 28 USC § 1391(b)(2) by

reason of the fact that a substantial part of the events or omissions giving rise to the claims herein occurred within the district.

## BACKGROUND & PARTIES

4.  Plaintiff Jason Jorjani is a citizen and resident of New York, New York, and of the United States of America. He was at all relevant times a governmental employee of the New Jersey Institute of Technology; however, his contract was refused renewal beyond the 2017–2018 academic year.

5.  The New Jersey Institute of Technology, (hereafter, "NJIT") is a public university with offices and a campus at University Heights, Newark, New Jersey. NJIT is organized and existing under the laws of the State of New Jersey and is a public corporate entity of the State of New Jersey, established by NJ 18A:64E-14.

6.  NJIT is governed by a Board of Trustees per N.J.S.A. 18A:64E-18.

    a.  Per subsection (b) of N.J.S.A. 18A:64E-18, said Board of Trustees has final authority to determine policies for the organization, administration and development of NJIT.

    b.  Per subsection (I) of N.J.S.A. 18A:64E-18, said Board of Trustees has final authority to determine controversies and disputes concerning tenure, personnel matters and other issues involving the university arising under Title 18A of the New Jersey Statutes.

    c.  Per subsection (o) of N.J.S.A. 18A:64E-18, said Board of Trustees has authority to adopt bylaws and amend the same.

d.   Accordingly, the Board of Trustees has, and at all relevant times had, policy making authority for NJIT rendering its behavior an act of official government policy for liability purposes.  Furthermore, the Board of Trustees is, and at all relevant times was, an official body with authority to ratify the unconstitutional actions of subordinates – to wit, President Bloom, Dean Belfield, and the Defendants herein – rendering such behavior official for liability purposes.

7.   President Joel S. Bloom is, and at all relevant times was, the President of NJIT and an employee of NJIT.

a.   Per subsection (h) of N.J.S.A. 18A:64E-18, Bloom is, and at all relevant times was, charged with nominating or recommending the appointment, removal, promotion and transfer all other officers, agents, or employees of NJIT to the Board of Trustees.

b.   Per NJIT Bylaws Article III, §1, Bloom is, and at all relevant times was, the chief executive officer of the Board of Trustees of NJIT.

c.   Furthermore, per NJIT Bylaws Article III, §2 (D), Bloom is, and at all relevant times was, charged with the duty to execute and make effective the policies, orders, decisions and other acts of the Board of Trustees; and, upon information and belief, pursuant to the same subsection, Bloom was delegated authority by the Board of Trustees or its Chairman to make decisions or recommendations bearing on the investigation, suspension, hiring, and firing of NJIT's faculty.

d.   As such, Bloom is a subordinate of the Board of Trustees.  In the alternative, Bloom is a final policy maker in his own right  rendering his behavior an act of

official government policy.

8.  Dean Kevin J. Belfield is, and at all relevant times was, the Dean of the College of Science and Liberal Arts at NJIT and an employee of NJIT.

9.  President Bloom and Dean Belfield have already been sued for the actions described herein in a case pending before this Court known as "Jorjani v. New Jersey Institute of Technology , et al. , Civil Action No. 2:18-cv-11693."

10. Defendant Fadi P. Deek is and at all times was the Provost and Senior Executive Vice President of NJIT.  Defendant Deek acted under color of law herein.

11. Defendant Eric Katz is and at all times was a professor at NJIT and Chairman of the Humanities Department at NJIT.  Defendant Katz once boasted that legally, Jorjani answered directly to him. Defendant Katz acted under color of law herein.

12. Defendant Denise Anderson is and at all times was an Associate Vice President at NJIT in the Office of Strategic Communications.  Defendant Denise Anderson acted under color of law herein.

13. Defendant Basil Baltzis is and at all times was a Senior Vice Provost at NJIT.  Defendant Baltzis acted under color of law herein.

14. Defendant Matthew Golden is and at all times was the Chief Strategy Officer on President Bloom's staff at NJIT.  Defendant Golden acted under color of law herein.

15. Defendant Holly Stern is and at all times was the General Counsel and Vice President at NJIT.  Defendant Stern acted under color of law herein.

16. Defendant Christine S. Li is and at all times was the Associate General Counsel at NJIT and its Ethics Liaison Officer.  Defendant Li acted under color of law herein.

- 4 -

17.    Defendants Deek, Katz, Anderson, Baltzis, Golden, Stern and Li, along with President Bloom and Dean Belfield, will sometimes be referred to herein as "the Conspirators."

18.    Defendant Stephen A. DePalma was the Chairman of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

19.    Defendant Dr. Vincent L. DeCaprio was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

20.    Defendant Lawrence A. Raia was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

21.    Defendant Dennis M. Bone was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

22.    Defendant Peter A. Cistaro was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

23.    Defendant Diane Montalto was a member of NJIT's Board of Trustee during the acts herein.  She acted under color of law herein.

24.    Defendant Joseph M. Taylor was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

25.    Defendant Dennis M. Toft was a member of NJIT's Board of Trustee during the acts herein.  He acted under color of law herein.

THE CONSPIRACY HEREIN

26.    On September 19, 2017, Jorjani was featured in a *New York Times* Op-Ed (the "*NYT* Op-Ed"), which caused considerable fallout at NJIT.

27.    In the days after the *NYT* Op-Ed, NJIT, President Bloom, Dean Belfield, Provost Deek, Defendant Golden, and others, put out the impression that Jorjani's involvement with right wing politics and his "associations with organizations that were not disclosed on [his] outside activity forms" came as a surprise to it. (The quoted words are from a letter to Jorjani dated September 25, 2017 which immediately suspended Jorjani from teaching.)

28.    ██████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████
██████████████████████████████████.

29.    ██████████████████████████████████████
████████████████████████████████████████████
████████████████████

30.    ████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

31.    ████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████



32. 

33.    Turning to the specific events at issue, Jorjani offers the following:

34.    For the 2016-2017 Academic Year, Jorjani was employed by NJIT as a University

Lecturer in the Department of Humanities.

35.    Jorjani performed well as a University Lecturer, so much so that the his supervisor,



36.    Indeed, Jorjani was particularly popular with his students,

37.    However, on November 19, 2016, Jorjani had addressed a conference known as the

National Policy Institute (NPI), which he attended to promote books printed by a

publisher of which he was then editor (said publisher being Arktos Media, Ltd.).    At said

conference, Jorjani spoke about, *inter alia*, the constructive criticism of the contemporary

political order and modern culture offered by the books published by Arktos Media,

which subjects are unquestionably matters of public concern.

38.    Also, Jorjani had been speaking off campus (extra-mural) and on his own time.

39.    ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████

40.    ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████

41.    ███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

"Around 1 p.m., just before the press conference began inside, a large crowd of the protesters began marching down Pennsylvania Avenue... They chanted 'fascists we will shut you down' and 'love trumps hate.' Some signs read 'alt-wrong' and 'white nationalism is un-American.' *The confrontation got tense at several points, with protesters with bandannas covering their faces surrounding some apparent conference attendees, shouting 'f\*\*\* off Nazis.' A man's head was bloodied, according to WUSA, and NBC Washington reported police detained at least two people*." (emphasis supplied).

42.    ███████████████████████████████████████████



43.

44.

45.

46.



47.

48.

49.

50.

51.





58. ███████████████████████████

███████████████████

59. ██████████████████

60. █████████████████████████

█████████████████████████

███████████████████████████

███████████████████████████

██

61. ██████████████████████████

█████████

62. █████████████████████████

███████████████████████████

███████████████████████████,



72. ███████████████████████████████████████████████
███████████████████████████████████████████
██████████

73. ████████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████ "

74. ███████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████

75. ██████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████████

76. ████████████████████████████████████████████████
█████████████████████████████████████████ .

77. ████████████████████████████████████████████████
████████████████████████████████████████ ."

78. ████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████

79. ███████████████████████████████████████████



80.

81.

”

82.

83.

84.



85. ████████████████████████████

86. ████████████████████████████

87. ████████████████████████████

88. ████████████████████



89.

90.

91.

92.

93.

94.

95. ████████████████████████████████████████
████████████████████████████████████
██████████████████████████████

96. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

97. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████



98. ████████████████████████████████████████
████████████████.

99.    

100.

101.

102.

103.

104.

105.



106.

107.

108.

109. 

116.  However, in the summer of 2017, while off campus and not working on his employer's time, Jorjani was surreptitiously taped speaking about matters of public concern in a pub in New York City.

117.  Part of this hours long conversation – surreptitiously obtained and recorded – ended up embedded in the *NYT* Op-Ed on September 19, 2017.

118.  Part of Jorjani's words delivered to the National Policy Institute back on November 19, 2016 had also ended up embedded in the *NYT* Op-Ed on September 19, 2017.

119.  As stated above, the *NYT* Op-Ed caused a sensation on NJIT's campus.





125.

126.

"NJIT is a university that embraces diversity and sees it as a source of strength.  The statements made by Mr. Jorjani in a video recently published by The New York Times are repugnant and antithetical to our institution's core values."

127.

128.

129.

130.    Notably, Dean Belfield did not wait to even see if Jorjani was disputing the content of the

*NYT* Op-Ed attributed to him before he released the Mass Email of September 20th.

131.

132.



133.

134.

135.

136.

137.

██████████████████████████████████████████████████

████████████████████████████

138.    ████████████████████████████████████████████

███████████████████████████ .

139.    ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

140.    Jorjani was notified of his suspension as it occurred by letter from Defendant Deek dated

September 25, 2017, which stated in relevant part:

> "We are aware of a recent New York Times article, as well as your responses
> to that article.  The article as related to you has caused significant disruption
> at the university, and based on our information, we believe that the disruption
> will continue to expand.  Further, the article and subsequent information
> provided by you reveals your association with organizations that were not
> disclosed on your outside activity forms, despite being directed by your Chair
> to fully update your outside activity disclosure form last Spring.
> "Given the disruptive impact of these events upon the university community,
> we are placing you on paid administrative leave effective immediately...

141.    ███████████████████████████████████████████

████████████████████████████████████████████████ .

142.    ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

143.    President Bloom, Dean Belfield, ███████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████





149. ███████████████████████████.

150. ██████████████████████████████████████████

██████████████████████████████████

███████████████

151. ██████████████████████████████████

███████████████████████████████████

██████████████

152. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

█████████████████████████████████

██████████

153. ██████████████████████████████████████

████████████████████████



154. [redacted].

155. [redacted]

156. [redacted]

157. [redacted]

158. [redacted]

159. [redacted]

160. [redacted]

161. ████████████████████████████████████████████████████

████████████████████████████████████████

162. ████████████████████████████████████████████

████████████████████████

163. President Bloom, in and through the authority vested in him by subsection (h) of N.J.S.A. 18A:64E-18, and NJIT Bylaws Article III, §§1 & 2 (D), among others, caused Jorjani's suspension on September 25, 2017 and launched an investigation of Jorjani.

164. ████████████████████████████████████████████

████████████████████.

165. In so doing, President Bloom abused the authority vested in him and had the aim of having Jorjani fired or, at the very least, not renewed beyond the current academic year.

166. ████████████████████████████████████████████

██████████████████████.

167. ████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

168. A███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

█    ████████████████████████████████████████████



169. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

FIRST CAUSE OF ACTION – CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS

170. ██████████████████████

171. ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████

172. ████████████████████████████████████████

███████████████████████████████████

173. ████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████

██ ████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

175.    The conspiracy resulted in the violation of Jorjani's constitutionally protected rights.

176.    Said conspiracy and overt acts were continuing in nature and caused Jorjani's

constitutional deprivations, injuries, suffering, pecuniary damages, and loss of both

reputation and income.

177.    The Conspirators herein shared the general conspiratorial objective, which was to

retaliate against Jorjani for the free exercise of First Amendment rights, as set forth

above.

178.    ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

179.    The acts of Defendants herein were motivated by malicious intent and grossly violative of

the professional standards to which Defendants are subject, to wit, the mandate of

academic freedom, free speech and inquiry, and NJIT's explicitly adopted standards.

Such acts evinced at least a reckless and callous indifference to the federally protected

rights of the Plaintiff, if not knowing and deliberate violation of said rights, thus entitling

Plaintiff to an award of punitive damages against the individually named Defendants.

180.    Furthermore, if Plaintiff prevails, he in entitled to an award of attorney's fees pursuant to

42 USC §1988.

181.    Wherefore Jorjani demands compensatory and punitive damages, jointly and severally, in

an amount to be determined at trial; and for the costs of this action, attorney's fees and such other further and different relief as this court deems just and proper.

WHEREFORE PLAINTIFF DEMANDS JUDGMENT:

a.    On the First Cause of Action, for compensatory and punitive damages, jointly and severally, in an amount to be determined at trial; and for the costs of this action, attorney's fees and such other further and different relief as this court deems just and proper.

Dated: Goshen, New York            Yours, etc.
       February 11, 2020

                              /s/Joseph J. Haspel
                              Joseph J. Haspel, PLLC
                              *Attorney for Plaintiff*
                              One West Main Street
                              Goshen, NY 10924
                              (845) 294-8950
                              JHaspel@Haspellaw.net