UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON JORJANI,<br><br>   Plaintiff,<br><br> v.<br><br>FADI P. DEEK, *et al.*,<br><br>   Defendants. | 20-cv-1422<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

  This matter arises out of the non-renewal of Plaintiff Jason Jorjani's ("Plaintiff") contract as a lecturer at the New Jersey Institute of Technology ("NJIT"). The matter comes before the Court on Defendants Fadi P. Deek, Eric Katz, Denise Anderson, Basil Baltzis, Matthew Golden, Holly Stern, Christine Li, Stephen A. DePalma, Vincent L. DeCaprio, Lawrence A. Raiai, Dennis M. Bone, Peter A. Cistaro, Diane Montalto, Joseph M. Taylor, and Dennis M. Toft's ("Defendants") motion to dismiss. ECF No. 22. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

  The facts underlying this matter were set forth in multiple opinions in another case pending before this Court, *Jorjani v. NJIT, et al.*, 18-cv-11693 ("*Jorjani I*"), familiarity with which is assumed. *See Jorjani I*, ECF Nos. 14 ("MTD Opinion"), 28 ("MTA Opinion"). In *Jorjani I*, Plaintiff adequately pled a claim against Joel S. Bloom (President of NJIT) and Kevin J. Belfield (Dean of the NJIT College of Science and Liberal Arts) for conspiracy to violate Plaintiff's First Amendment rights. *See* MTA Opinion at 2-4.

  In this matter ("*Jorjani II*"), Plaintiff accuses the above-listed Defendants of being part of that conspiracy. It also provides more factual details of the conspiracy. As the relevant allegations are particular to each argument, they will be discussed in detail below.

### II. STANDARD OF REVIEW

  To survive a FRCP 12(b)(6) motion to dismiss, plaintiffs must state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Courts accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). But courts do not accept "legal conclusions" as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

#### A. Duplicative Complaint

  Defendants argue *Jorjani II* should be dismissed as duplicative of *Jorjani I*. In support, Defendants cite *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977) (en banc) and

1

*Fabics v. City of New Brunswick*, 629 F. App'x 196 (3d Cir. 2015), in which the Third Circuit approved of the dismissal of second-filed actions by plaintiffs against the same defendants. But, as Plaintiff points out, *Jorjani II* asserts liability against a different set of defendants. Opp. at 6.[1] Thus, *Walton* and *Fabics* are inapplicable. However, given the many common questions of law and fact, the Court will **CONSOLIDATE** the two matters, with *Jorjani I* serving as the lead case. *See* FRCP 42(a).

### B. Adequacy of Conspiracy Allegations

Next, Defendants present substantive arguments for dismissal under FRCP 12(b)(6). To overcome those arguments, "Plaintiff's allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. *Prince v. Aiellos*, 09-5429, 2010 WL 4025846, at *7 (D.N.J. Oct. 12, 2010) (cleaned up). "[P]laintiff must allege that two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law." *Id.* "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.* Instead, "Plaintiff must show that the alleged conspirators directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Id.* (cleaned up).

#### 1. Chronology Generally

Defendants also argue for dismissal because the alleged conspiracy's chronology is logically flawed. Mot. at 11-14. Plaintiff alleges that Defendants conspired to remove him due to his political views and protected speech by early 2017. *Id.* (citing Compl. ¶¶64-74).[2] Defendants allegedly schemed to create a pretextual reason for removal—*de minimus* errors in Plaintiff's Outside Activities Questionnaire ("OAQ")—in order to hide the true reason for his separation. *Id.* (citing Compl. ¶ 73). But, instead firing Plaintiff in 2017, NJIT renewed his contract for another year. *Id.* Thus, Defendants argue, "Plaintiff alleges a conspiracy that is 'nonsensical,' and dismissal is appropriate. *Id.*

Plaintiff responds that Defendants delayed "because they were uneasy and conscious of their guilt." Opp. at 7 (citing Compl. ¶ 31). However, when the New York Times ("NYT") published an opinion piece ("Op-Ed") featuring Plaintiff, NJIT received unwanted attention and Defendants returned to their conspiratorial mission. *See id.* According to Plaintiff, that mission culminated in a pretextual investigation and the non-renewal of Plaintiff's contract for the following academic year. Compl. ¶ 4.

Because the Court must accept Plaintiff's factual allegations as true, it will not dismiss the case due to the sequence of alleged events. Accepting that Defendants delayed their attempts to remove Plaintiff under a pretextual guise, then reengaged in that effort

---

[1] Plaintiff clarifies that the Defendants in *Jorjani II* are named in their individual capacities, thus NJIT is not a party, as it is in *Jorjani I*.

[2] Given the still-pending motions to seal, the Court will reference the publicly filed briefs where they accurately reflect redacted portions of the Complaint, except where the allegations themselves do not plausibly contain confidential information or are discussed in the public motion papers.

once Plaintiff's employment became more problematic, Plaintiff plausibly states a claim. But that does not mean every Defendant is liable under the facts alleged.

### 2. *Trustee Defendants*

Defendants argue the claims against Defendants DePalma (Chairman of the Board of Trustees), DeCaprio, Raiai, Bone, Cistaro, Montalto, Taylor, and Toft (together, "Trustees") must be dismissed because, *inter alia*, "the Complaint fails to satisfy the[] requirements for pleading that the individual Trustees . . . joined a conspiracy to deprive Plaintiff of his civil rights." Mot. at 17. The Court agrees.

Rather than provide factual allegations describing the Trustees' role in the alleged conspiracy, Plaintiff broadly alleges, "upon information and belief," that the Trustees (1) knew about the conspiracy, going back to November 2016; (2) "understood that [Plaintiff's] First Amendment Rights had been violated"; and (3) "knowingly ratified the First Amendment retaliation . . . by refusing to renew Jorjani's contract." Compl. ¶¶ 155-159. The most specific allegations are that Chairman DePalma secretly conferred with NJIT's president, became aware of the conspiracy, and shared that information with the other Trustees. *Id.* ¶¶ 156-157.[3]

Nowhere does Plaintiff allege *facts* from which the Court could *plausibly* conclude the Trustees "reached an agreement for the purpose of depriving him of his constitutional rights." *Prince*, 2010 WL 4025846, at *7. Mere awareness of the conspiracy is not enough for liability to attach. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993) (requiring "more than merely be[ing] aware of a deprivation of right"). And while Plaintiff alleges the Trustees "ratified" the non-renewal, the applicable statute and collective bargaining agreement did not empower the trustees to interfere in Plaintiff's case.[4] While decision-making authority is not necessary to be part of a conspiracy, it would at least help explain the Trustees alleged role. As it stands, Plaintiff has failed to allege facts that plausibly state a claim for relief against the Trustees in their individual capacities, and those claims are **DISMISSED**.

---

[3] Plaintiff also alleges that "NJIT (through the Board of Trustees identified above) . . . took adverse actions against [Plaintiff]" by suspending, investigating, and refusing to renew Plaintiff's contract. Compl. ¶ 167. However, there are no plausible allegations that NJIT's Trustees, individually, were part of those actions. While the Board of Trustees oversees NJIT, personnel decisions by University employees—in which the Trustees did not play an active role—are not imputable onto the Trustees in their individual capacities.

[4] The Trustees statutory power to resolve personnel disputes is "[s]ubject to provision[s] for impartial binding dispute resolution through collective bargaining." N.J.S. 18A:64E-18(i). Pursuant to the collective bargaining agreement referenced in Plaintiff's complaint, grievances are escalated to New Jersey's Public Employment Relations Commission or an academic review committee, not the Trustees. *See* July 1, 2015 – June 30, 2019 NJIT/PSA/AAUP Agreement § VI, https://www5.njit.edu/policies/sites/policies/files/PSA-Contract-2015-2019-FINAL-toc2.pdf.

### 3. *Eric Katz*

Next, Defendants argue the claim against Katz (chair of NJIT's Humanities Department) should be dismissed because (1) "Katz is not alleged to have taken part in the actual decision not to renew Plaintiff's contract" and (2) the factual allegations fail to set forth a conspiracy claim against Katz. Mot. at 20-23.

Defendants fail to cite any authority for the proposition that Katz must have taken part in the actual non-renewal decision to be liable. While such participation could evidence membership in a conspiracy, it is not a necessary element.

As to the factual allegations, Plaintiff counters by citing various paragraphs of the Complaint. Opp. at 15 (citing Compl. ¶ 11, 36, 40-43, 73, 81-89, 97-99, 101-102, 113, 125, 132). Most are irrelevant to the elements of a conspiracy, and simply allege that Katz found Plaintiff's views distasteful and communicated with others about Plaintiff's activities. *See* Compl. ¶¶ 11, 36, 40-43. Some do not mention Katz at all. *See id.* ¶ 73. Plaintiff points particularly toward paragraphs 86-88. He does accuse Katz of, "as part of the OAQ Conspiracy," reaching out to Plaintiff regarding his outside activities. *Id.* ¶ 86. But that portion of the allegation is conclusory and need not be credited. Excluding conclusory statements, Plaintiff does not sufficiently allege that Katz reached a "mutual understanding or agreement" with others. *Prince*, 2010 WL 4025846, at *7. He may have "acted in conscious parallelism," known about the conspiracy, or hoped for Plaintiff's removal. *Id.* But there are no *factual* allegations from which the Court can conclude Katz "reached an agreement for the purpose of depriving" Plaintiff of his rights. *Id.* Accordingly, the claim against Katz is **DISMISSED**.

### 4. *Basil Baltzis*

Defendants argue Plaintiff fails to sufficiently allege "Baltzis entered into some agreement to deprive Plaintiff of any right." Mot. at 24. The Court agrees. The only allegations against Baltzis are that (1) he serves as Senior Vice Provost; (2) he received an email from Defendant Deek because he "shared in the OAQ conspiracy" and had discussions with others "as a way of forwarding the conspiracy"; (3) he was involved in discussions regarding Plaintiff's speech and political associations; and (4) he disliked Plaintiff and desired to separate him from NJIT. Compl. ¶¶ 13, 62-63, 100. Stripping away conclusory statements, the Complaint does not allege facts from which the Court could plausibly conclude Baltzis "reached an agreement" to deprive Plaintiff of his rights. *Prince*, 2010 WL 4025846, at *7. Accordingly, the claim against Baltzis is **DISMISSED**.

### 5. *Denise Anderson*

Similarly, Defendants argue Plaintiff fails to state a claim against Defendant Anderson. Mot. at 24. Again, the Court agrees. Plaintiff simply alleges (1) Anderson's job title (Associate Vice President in the Office of Strategic Communications), (2) that she was part of discussions regarding Plaintiff's political speech and activities, (3) that she had strong feelings against Plaintiff, (4) that she received an email from Defendant Golden on how to respond to an inquiry from BuzzFeed News, in which Golden requested a meeting; and (5) when she "responded to [a third-party's] email which effectively called for Jorjani to be fired . . . [she] failed to defend Jorjani's First Amendment rights and instead

4

attempted to placate the person." Opp. at 17 (citing Compl. ¶¶ 12, 56, 62-64, 92). None of those facts plausibly allege an agreement to violate Plaintiff's rights. *See Prince*, 2010 WL 4025846, at *7. Plaintiff also points to conclusory paragraphs which generally allege the existence of a conspiracy between "[t]he Conspirators." Opp. at 18 (citing Compl. ¶¶ 171, 177). The Court does not credit these conclusory allegations. Accordingly, the claim against Anderson is **DISMISSED**.

### 6. *Matthew Golden*

Defendants similarly argue the allegations against Defendant Golden fail to plausibly state a claim for relief. Mot. at 25-27. The allegations against Golden are slightly more robust, but still fall short. Golden is alleged to have had discussions regarding Plaintiff's speech and held negative feelings toward Plaintiff. Opp. at 18 (citing Compl. ¶¶ 62-64). He also allegedly sent and received emails regarding outside inquiries into Plaintiff's activities and employment. *Id.* (citing Compl. ¶¶ 45, 82, 94, 127). Finally, he allegedly drafted the statement published by NJIT President Bloom and Dean Belfield (Defendants in *Jorjani I*). *Id.* (citing Compl. ¶¶ 126-128).

As Plaintiff points out, Bloom and Belfield's joint statement was part of the Court's basis for finding Plaintiff adequately stated a conspiracy claim in *Jorjani I*. *See Jorjani I*, ECF No. 28, at 3-4. However, it was Bloom and Belfield's positions of authority, instigation of an investigation, and the publication of their statement "for the purpose of dissociating Plaintiff from NJIT due to his protected conduct" that, in combination, the Court found sufficient. *Id.* at 3-4 & n.3. Unlike Bloom and Belfield, Defendant Golden did not have authority over Plaintiff or instigate the investigation. Stripping away conclusory statements, Plaintiff fails to plead facts from which the Court could plausibly conclude Golden entered an illegal conspiracy, rather than simply performed his job functions. *See Iqbal*, 556 U.S. at 681 (finding allegations "consistent" with theory of liability "[b]ut given more likely explanations," not sufficient). Accordingly, the claim against Golden is **DISMISSED**.

### 7. *Holly Stern and Christine Li*

Finally, Defendants argue the claims against Stern and Li, two NJIT attorneys, must be dismissed because (1) they are not decision-makers with respect to Plaintiff's employment and (2) the claims are based on "speculation regarding a single privileged communication from Li to Stern, on which the subject line read 'Tracy v. Florida Atlantic University.'" Mot. at 27.

As previously discussed, while decision-making authority helps buttress allegations of membership in a conspiracy to remove Plaintiff, it is not a necessary element of the claim. *See supra* Part III.B.3. As to Defendants' argument regarding the privileged communication, the propriety of utilizing such information in the Complaint is not presently at issue. Instead, the question is whether Plaintiff has alleged enough facts to state a plausible claim for relief against Stern and Li. He has.

The Complaint adequately alleges that Stern and Li worked together to create a pretext for firing Plaintiff to disguise the true reason for his separation. Compl. ¶ 72. Unlike the general, conclusory allegations against the Defendants discussed above,

Plaintiff provides factual details as to Stern and Li's alleged conduct and plan. *See id.* ¶¶ 68-73. The facts alleged, and all reasonable inferences to be drawn therefrom, are just enough to tip the scales into plausibly stating a conspiracy claim, as opposed to Li and Stern simply performing routine work for NJIT (as the Court concluded for Defendant Golden). *See id.* ¶¶ 68-73, 89-90, 108-109, 111, 134, 137. Accordingly, Defendants' motion to dismiss the claims against Stern and Li is **DENIED**.

### C.   Prejudice

Defendants seek dismissal with prejudice. Mot. at 3, 9. Plaintiff requests leave to replead if the Court finds the claims are not adequately pled. Opp. at 12. Generally, amendment is permitted absent "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed . . . , [or] futility of amendment." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As Plaintiff already amended his Complaint in *Jorjani I* and filed this separate action, Plaintiff has already had three chances to assert valid claims. Plaintiff has repeatedly failed to cure deficiencies in his pleadings, especially the conclusory nature of his allegations. Further, permitting Plaintiff to file a fourth complaint, more than two year's after his original filing, would cause "undue delay." *Id.* Accordingly, leave to amend is **DENIED** and dismissal is with **PREJUDICE**.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss, ECF No. 22, is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order follows.

Date: September 10, 2020

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**